## Edwin Alexander Hudson v. State

No. 25532. November 28, 1951.
Rehearing Denied January 9, 1952.

Hon. Langston King, Judge Presiding.

*M. Gabriel Nahas, Jr.,* and *King Haynie,* Houston, for appellant.

*Sam W. Davis,* Criminal District Attorney, *Ben S. Morris,* Assistant Criminal District Attorney, both of Houston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of five years in the penitentiary under an indictment charging a felony theft.

As returned by the grand jury, the indictment alleges the

theft of seventeen hundred dollars in money, the property of Alfred Craver. Frank E. Morley was jointly indicted but appellant was separately tried.

The sole contention before this court now is that the facts introduced show embezzlement rather than theft. The pertinent facts show that Morley was employed by a company of which Craver was the manager. His duties were general office work, assisting Craver and having charge of the property in Craver's absence. He worked on the books and took the money to the bank as directed, but was accompanied by some other person in doing so. The manager of the business testified in detail as to Morley's duties and it seems perfectly clear that he had no fiduciary relationship in the matter, but only acted as a servant under the direction of his superior, both while his superior was present and while he was absent.

Morley lived in a trailer house near one in which this appellant lived. Some days prior to the alleged theft Morley described his situation in which he frequently handled large sums of money and they planned to burglarize the place and get the money, to be divided between them later. On a Saturday night they went into the place, took the money out of the safe and planned to carry it away and to break the safe up to indicate that the money had been taken by a burglar. This appellant, however, concluded that he did not have tools with which to make the job look to be a complete one and they changed their plan, but took the money out that night. The following day they returned to the place and appellant bound Morley with scotch tape and left him, indicating that he had been robbed. What happened immediately after that is not disclosed by the record. Some days later this appellant appeared in an automobile sales place with a wrecked car which he had previously bought from the same concern. He reported the wreck and desired to trade automobiles. An agreement was entered into and he told them that he had been saving quarters, which were in the gasoline tank, and he would pay for the car with them. The money was retrieved from the tank, produced and counted, or was in the process of being counted, when an officer arrived and gathered information which led to the arrest of appellant.

Confronted with this situation, he signed a written confession which he did not attempt to repudiate. In this he involved Morley and it led to the return of the indictment.

Quite an ingenious argument and brief have been presented by the appellant on appeal. The question raised was discussed in oral argument and, upon its face, presents a plausible question. We have concluded, however, that Morley was not acting within the scope of his employment by entering the safe and taking possession of the money, that he did so with an evil intent previously engendered and he cannot be classed as one having possession of money lawfully and thereafter converting the same to his own use. In this the elements of embezzlement are not met. See Zysman v. State, 42 Tex. Cr. R. 432, 60, S.W. 669, from which we quote:

"Appellant insists that the prosecution, if authorized at all by the evidence, would only be for embezzlement. We do not agree with this. The evidence shows that appellant was the agent, employee, or clerk of the prosecutor, having control of his pawnshop part of the time during the absence of the prosecuting witness, but all the while under the direction and supervision of the prosecutor, and that if he took such property, as is alleged in the indictment, from said house, without the consent of the prosecutor, he would be guilty of theft, and not of embezzlement, and hence the indictment was properly drawn for theft."

The question is discussed in Gideon v. State, 119 Tex. Cr. R. 612, 44 S.W. 2d 687, under the situation described as follows:

"Under these facts we think the contention of appellant unsound, and that the court properly refused his special charge. The owner of the property was temporarily away, but the property was left in the house in the custody of the servant, with no right of disposition of any of same, and no duty toward the property save to obey the directions of the owner and keep said property clean and in order. Mr. Graves testified: 'As far as the property is concerned, the maid had no authority to dispose of it or anything like that.' We think the recent case of Burges v. State, 114 Tex.Cr.R. 664, 26 S.W. 2d 229, 230, in point and decisive."

The question thus presented has been before this court many times and in many and varied situations. It is frequently a difficult one but we think the facts of the instant case, which are without dispute, clearly describe a case in which an indictment for theft is proper.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

MORRISON, Judge.

Appellant has presented an exceptionally clear and concise motion for rehearing in which he very thoughtfully analyzes the holdings of this court in the border-line cases between theft and embezzlement.

The sole question for review herein is the legal relationship of Morley to the funds taken at the time of the taking.

If the nature of his employment was such that he occupied a fiduciary relationship thereto, as contended by appellant, then the taking by Morley and his co-principal would come within the purview of the embezzlement statute.

If, on the other hand, as contended by the state, Morley was a mere custodian of such funds, the taking thereof would constitute theft.

Regardless of the general terms in which Morley's employer described his duties, we must closely examine the nature of the business enterprise and Morley's relationship to the funds taken at the time of the taking in order to resolve the issue herein.

This was a branch office of a refrigerator and store fixture sales company. This company sold its equipment on what they called a daily pay plan. To each piece of equipment was attached a meter in which the purchaser deposited twenty-five cent pieces. At regular intervals, a representative of the company, one Ehrlich, called upon the customers, took the quarters out of the meters, gave the customer a receipt, and brought the proceeds to the company's office. There, he delivered the same to Morley. Morley put the money in the company safe, kept the books, and later made up the deposit slips and deposited the money so received in the bank to the company's credit. No bills were paid by this branch office. This is not a case of Ehrlich appropriating the fruits of his collection before he reached the company office, nor one in which Morley started to the bank with the company funds, but appropriated such funds to his own use on the way. In the case at bar, the money was taken from the safe at night. It was in the possession of the master at the time it was taken. Having no legal control over the funds at that hour, they could not be said to be in Morley possession.

This case is readily distinguishable from the ordinary case of embezzlement where the taker has been given possession of the funds through the confidence of his employer and, by virtue of such possession and in the course of his lawful handling of the same, converts all or part thereof to his own use. In this case, the prosecutor knew exactly when and how he had been defrauded. Surely, if the salesgirl makes a sale, deposits the proceeds in the cash register, and then extracts some of said funds therefrom, she would be on no different footing than a customer who stealthily took from the same register. Had Morley and appellant broken in the door and blown open the safe, as indeed they had originally planned to make the same appear, there would have been no question of embezzlement. In the case at bar, they, like the salesgirl, used Morley's position of advantage as an employee and stole the money from the safe. The facility with which an offense is consummated does not change the character of the crime committed. A number of cases dealing with the question of "Capacity or character in which property is received or held" may be found annotated in Texas Digest, Embezzlement, Key 10.

After mature deliberation, we cannot bring ourselves to dignify the relationship of Morley to the funds while in the safe at night as being a fiduciary one. As we view the evidence, there was no question for the jury's determination as to his relationship to the funds.

Appellant's motion for rehearing is overruled.