Donald Wayne **DEDMON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44734.

Court of Criminal Appeals of Texas.

April 12, 1972.

Donald R. Scoggins, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for theft of property under the value of $50.00 and over the value of $5.00. Appellant was tried before the court, which found him guilty and assessed his punishment at confinement for five days and a fine of $200.00.

The evidence reflects that at about 9:30 p. m., on August 18, 1970, Officers Cranford and Cheatham of the Dallas Police Department entered Big Mary's Cafe, located on Commerce Street in Dallas, for the purpose of eating dinner. The officers seated themselves in a booth near a pool table in the restaurant, where appellant and several other men were playing pool. The pool players repeatedly made derogatory remarks to the officers; however, the officers did not reply but merely moved to a table on the other side of the room, where they finished their meal. As the officers were leaving the restaurant, appellant stated, "Well, the blue-suited bastards are finally going to leave." According to Cranford, "[T]hat was just about more than we could ignore."

At this time, the officers arrested appellant for disorderly conduct. Cheatham then took appellant by the arm and led him to the front door. Appellant jerked away and "took a swing" at Cheatham, but was restrained by the officers. Four of appellant's fellow pool players tried to interfere, so Cranford remained in the restaurant with them while Cheatham took appellant outside the restaurant. Cheatham placed his handcuffs, of the approximate value of $13.00, on appellant and placed him in the police car which was outside the restaurant. Officer Cheatham called for assistance on the police car radio, and then went back inside the restaurant to assist Cran-

ford. The officers arrested two more men in the restaurant and brought them outside to the car. Upon arriving at the car, the officers discovered that appellant and Cheatham's handcuffs were gone. The handcuffs were never returned to the officer. Cheatham testified that he did not give appellant permission to take his handcuffs. Appellant was tried and convicted of the theft of the handcuffs, and he appeals.

Appellant raises two grounds of error. In his first ground, he contends that the trial court erred in finding him guilty of theft because the evidence shows that he came into possession of the handcuffs by lawful means and that therefore, by virtue of Art. 1413, Vernon's Ann.P.C., he cannot be guilty of theft. Appellant also contends that since the arresting officer willfully placed the handcuffs on him, the taking was not theft as defined in Art. 1410, V.A.P.C.

The State answers appellant's contention by asserting that appellant was never in lawful possession of the handcuffs, but merely had them in his custody, and that the arresting officer never parted with possession of the handcuffs.

Article 1410, V.A.P.C., defines theft thusly:

" 'Theft' is the fraudulent taking of corporeal personal property belonging to another from his *possession,* or from the *possession* of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." (Emphasis supplied)

Article 1413, V.A.P.C., provides, in part:

"The taking must be wrongful, so that if the property came into the *possession* of the person accused of theft by lawful means, the subsequent appropriation of it is not theft . . . . " (Emphasis supplied)

Article 1415, V.A.P.C., defines possession thusly:

"Possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care and management of the property, whether the same be lawful or not."

▆ The law has long recognized a distinction between mere custody and possession. E. g., Hall v. Great National Lloyds, 154 Tex. 200, 275 S.W.2d 88 (1955); English v. State, 441 S.W.2d 195 (Tex.Crim. App.1969); Hudson v. State, 156 Tex.Cr. R. 566, 244 S.W.2d 835 (1952); Boatright v. State, 121 Tex.Cr.R. 578, 51 S.W.2d 311 (1932); Gideon v. State, 119 Tex.Cr.R. 612, 44 S.W.2d 687 (1931); Emerson v. State, 33 Tex.Cr.R. 89, 25 S.W. 289 (1894); Dignowitty v. State, 17 Tex. 521 (1856); 55 Tex.Jur.2d, Theft, § 24; see generally Anno. 125 A.L.R. 367. It is also well established that one who has mere custody of property, as opposed to possession, may be guilty of the theft of that property. Hudson v. State, supra; McGraw v. State, 142 Tex.Cr.R. 432, 154 S.W.2d 645 (1941); Watkins v. State, 84 Tex.Cr.R. 412, 207 S.W.2d 926 (1919); Dignowitty v. State, supra.

▆ In the instant case, the issue turns on whether, at the time the handcuffs were placed on appellant, he was put in possession of them, or conversely, if at that time Cheatham relinquished his possession voluntarily. If Cheatham did so, then appellant came into possession of the handcuffs lawfully and with the consent of Cheatham. In that event, his subsequent taking cannot constitute theft.

An examination of the evidence indicates quite clearly that appellant was not put in possession of the handcuffs when they were placed on him by Cheatham. Possession, as defined by Art. 1415, supra, means the control, care and management of the property. That a person to whom handcuffs are applied, against his will, can be

said to have them under his control, care and management seems manifestly absurd. The very nature of handcuffs precludes their possession, in the legal sense, by the person to whom they are applied. Appellant's dominion over the handcuffs, if anything, was merely custodial.

Likewise, under the statutory definition of possession, Cheatham had not relinquished possession of the handcuffs when he placed them on the appellant. Again, the very nature of the act of applying handcuffs is not compatible with a relinquishment of possession. One who applies handcuffs to another is seeking to place that person under his control, care and management. Therefore, it follows that the instrumentality used to effect that end remains in the possession of the person so using it.

Therefore, the handcuffs still being in the possession of Cheatham, and not in appellant's possession, at the time they were placed on appellant, it follows that appellant's subsequent taking of them was theft. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in failing to grant his motion to dismiss the case, in which he alleged that to try him for the present offense would be to place him twice in jeopardy.

The record reflects that prior to trial, appellant filed an unsworn "Motion to Dismiss" in which he alleged that he had been tried and convicted in Corporation Court of the offenses of escape and disorderly conduct, both of which arose out of the same transaction as the instant offense. Attached to the motion was a certified copy of a docket sheet and minutes of the Corporation Court of the city of Dallas

dated September 17, 1970. Two entries on that sheet reflected that a Donald Dedmon plead guilty and was found guilty by the court of the offenses of escape and "Dis Cond." The docket sheet of the County Court reflects that a hearing was held on the motion, and that it was overruled.

■ A special plea of former conviction must be verified. Arts. 27.05 and 27.06, Vernon's Ann.C.C.P. Therefore, the overruling of appellant's motion was not error. Morrison v. State, 170 Tex.Cr.R. 218, 339 S.W.2d 529 (1960); Wrenn v. State, 82 Tex.Cr.R. 642, 200 S.W. 844 (1918).

Even if the motion had been properly verified, the state of the record is such that this Court is unable to review appellant's contention on the merits. The record does not indicate what evidence, if any, was adduced at the hearing on the motion. There is no evidence in the record to indicate that, (1) the convictions reflected in the docket sheet did, in fact, arise out of the same transaction, (2) the Donald Dedmon named in the docket sheet is the same person as appellant and, (3) that appellant was in fact convicted (the docket sheet which was attached to appellant's motion was merely part of the pleadings). The record does reflect that appellant was arrested for disorderly conduct, and Cranford testified that charges of disorderly conduct, resisting arrest, escape, and theft were brought against appellant. However, no mention is made in the record of the disposition of those charges. Since the record is devoid of evidence in support of appellant's motion, his second ground of error cannot be reviewed. See Shaffer v. State, 477 S.W.2d 873 (Tex.Crim.App., 1972).

The judgment is affirmed.